No. 17-1897

# United States Court of Appeals
# for the Federal Circuit

_____

ROBERT MANKES,

*Plaintiff - Appellant,*

v.

FANDANGO, LLC AND REGAL ENTERTAINMENT GROUP,

*Defendants - Appellees.*

_____

Appeal from the United States District Court for the Eastern District
of North Carolina in case No. 5:13-cv-00716-FL, Judge Louise Wood Flanagan

## RESPONSE BRIEF OF APPELLEES FANDANGO, LLC
## AND REGAL ENTERTAINMENT GROUP

Steven Lieberman
Sharon L. Davis
ROTHWELL, FIGG, ERNST
  & MANBECK, PC
607 14th Street, N.W., Suite 800
Washington, D.C.  20005
Telephone: (202) 783-6040

David B. Conrad
Neil J. McNabnay
Ricardo J. Bonilla
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
Telephone:  (214) 747-5070

*Attorneys for Defendant-Appellee*
*Fandango, LLC*

*Attorneys for Defendant-Appellee*
*Regal Entertainment Group*

July 24, 2017

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Robert Mankes     **v.**     Fandango, LLC, Regal Entertainment Group

Case No.     17-1897

## CERTIFICATE OF INTEREST

Counsel for the:

☐ (petitioner) ☐ (appellant) ☐ (respondent) ☒ (appellee) ☐ (amicus) ☐ (name of party)

Fandango, LLC

certifies the following (use "None" if applicable; use extra sheets if necessary):

| 1. Full Name of Party Represented by me | 2. Name of Real Party in interest (Please only include any real party in interest NOT identified in Question 3) represented by me is: | 3. Parent corporations and publicly held companies that own 10 % or more of stock in the party |
|---|---|---|
| Fandango, LLC | Fandango, LLC | Comcast Corporation |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

4.  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court (**and who have not or will not enter an appearance in this case**) are:

Rothwell, Figg, Ernst & Manbeck, P.C. - Steven M. Lieberman, Sharon L. Davis, Michael H. Jones

Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, LLP - Robert J. Morris, Michael W. Mitchell

April 19, 2017

Date

*/s/ Steven M. Lieberman*

Signature of counsel

Please Note: All questions must be answered

Steven M. Lieberman

Printed name of counsel

cc:  All counsel of record

Reset Fields

i

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Mankes     **v.**     Regal Entertainment Group

Case No.    17-1897

## CERTIFICATE OF INTEREST

Counsel for the:
☐ (petitioner) ☐ (appellant) ☐ (respondent) ☒ (appellee)☐ (amicus)☐ (name of party)

Regal Entertainment Group

certifies the following (use "None" if applicable; use extra sheets if necessary):

| 1. Full Name of Party Represented by me | 2. Name of Real Party in interest (Please only include any real party in interest NOT identified in Question 3) represented by me is: | 3. Parent corporations and publicly held companies that own 10 % or more of stock in the party |
|---|---|---|
| Regal Entertainment Group | N/A | The Anschutz Corporation |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court (**and who have not or will not enter an appearance in this case**) are:

Fish & Richardson P.C.; Neil McNabnay; David Conrad; Danielle Thompson; Ricardo Bonilla; Theresa Dawson

4/26/2017
            Date

/s/ Ricardo J. Bonilla
          Signature of counsel

Please Note: All questions must be answered

Ricardo J. Bonilla
          Printed name of counsel

cc:    Opposing Counsel

Reset Fields

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ................................................................... i

TABLE OF CONTENTS ........................................................................... ii

TABLE OF AUTHORITIES ..................................................................... iii

STATEMENT OF RELATED CASES ..................................................... 1

STATEMENT OF THE ISSUES ................................................................ 1

STATEMENT OF THE CASE .................................................................... 1

SUMMARY OF U.S. PATENT NO. 6,477,503 ........................................ 3

SUMMARY OF ARGUMENT .................................................................. 6

ARGUMENT ........................................................................................... 10

I.    Standard of Review and Legal Standards for Motions to Dismiss
      Based on Lack of Patent Eligible Subject Matter ..................................... 10

II.   *Alice* Step One:  The District Court Correctly Found That the Claims
      of the '503 Patent are Directed to the Abstract Idea of Allocating,
      Tracking and Controlling Inventory ......................................................... 12

III.  *Alice* Step Two:  The District Court Correctly Held that the '503
      Patent Claims Did Not Include an Inventive Concept Sufficient to
      Confer Patent Eligibility .......................................................................... 22

IV.   The District Court Correctly Found that the '503 Patent Implicates
      Concerns for Preemption in the Field of Local and Remote Inventory
      Control ...................................................................................................... 26

V.    The District Court Did Not Err in Finding the '503 Patent Claims
      Patent Ineligible on a Rule 12 Motion ..................................................... 29

CONCLUSION ........................................................................................ 32

# TABLE OF AUTHORITIES

## Cases

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*,
    728 F.3d 1336 (Fed. Cir. 2013) ..................................................................... 18, 29

*Akamai Technologies v. Limelight Networks, Inc.*,
    797 F.3d 1020 (Fed. Cir. 2015) (en banc) ...........................................................3

*Alice Corp. v. CLS Bank Int'l*,
    134 S.Ct. 2347 (2014) .............................................................................. passim

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................11

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................11

*Bilski v. Kappos*,
    561 U.S. 593 (2010) .................................................................................. 15, 30

*Burbach Broad. Co. v. Elkins Radio Corp.*,
    278 F.3d 401 (4th Cir. 2002) ...........................................................................10

*buySAFE, Inc. v. Google, Inc.*,
    765 F.3d 1350 (Fed. Cir. 2014) .......................................................................23

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014) .......................................................................10

*Credit Acceptance Corp. v. Westlake Servs.*,
    859 F.3d 1044 (Fed. Cir. 2017) ................................................................ passim

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014) ................................................................ passim

*Electric Power Group, LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir.  2016) ......................................................................23

*Enfish LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016) ................................................................ passim

*Global Internet v. AT&T Mobility LLC*,
   827 F.3d 1341 (Fed. Cir. 2016) ..............................................................31

*I/P Engine, Inc. v. AOL Inc.*,
   576 F. App'x 982 (Fed. Cir. 2014).........................................................17

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
   792 F.3d 1363 (Fed. Cir. 2015) .............................................. 21, 26, 30

*Limelight Networks, Inc. v. Akamai Technologies, Inc.*,
   134 S. Ct. 2111 (2014) ...........................................................................2

*Mankes v. Vivid Seats Ltd.*,
   822 F.3d 1302 (Fed. Cir. 2016) ...........................................................3, 6

*McRO, Inc. v. Bandai Namco Games America, Inc.*,
   837 F.3d 1299 (Fed. Cir. 2016) ................................................... passim

*Mortgage Grader v. First Choice Loan Servs.*,
   811 F.3d 1314 (Fed. Cir. 2016) ............................................. 6, 16, 17

*OIP Techs., Inc. v. Amazon.com, Inc.*,
   788 F.3d 1359 (Fed. Cir. 2015) ................................................. 10, 24

*TLI Communs. LLC v. AV Auto., L.L.C.*,
   823 F.3d 607 (Fed. Cir. 2016) .................................................... passim

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014) ......................................... 11, 23, 29, 30

*Virginia Innovation Scis., Inc. v. Amazon.com, Inc.*,
   227 F. Supp. 3d 582 (E.D. Va. 2017)..................................................27

## Statutes

35 U.S.C. § 101 ................................................................... passim

35 U.S.C. § 271 .....................................................................................2

## Rules

Fed. R. Civ. P. 12(b)(6)........................................................ 1, 2, 10, 31

**Other Authorities**

C. Wright & A. Miller,
   FEDERAL PRACTICE & PROCEDURE § 1216 .........................................................11

## STATEMENT OF RELATED CASES

A previous appeal from this same civil action was before this court in case 2015-1501. That appeal was decided by Circuit Judges Taranto, Schall, and Chen on April 22, 2016, and is reported at *Mankes v. Vivid Seats Ltd.*, 822 F.3d 1302 (Fed. Cir. 2016).

Defendants-Appellees are unaware of any other case that will directly affect or be directly affected by this Court's decision in the pending appeal.

## STATEMENT OF THE ISSUES

1.     The claims of U.S. Patent No. 6,477,503 are directed to the abstract idea of allocating, tracking, and controlling inventory, and use standard computer technology to implement that idea. Did the district court correctly determine that those claims are directed to patent ineligible subject matter under 35 U.S.C. § 101 and properly grant Defendants-Appellees' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on that basis?

## STATEMENT OF THE CASE

Plaintiff-Appellant Robert Mankes ("Mankes") accuses Defendants-Appellees Fandango, LLC ("Fandango") and Regal Entertainment Group ("Regal") of infringing U.S. Patent No. 6,477,503 (the "'503 patent"). In particular, Mankes alleges that the use of Fandango's online ticket reservation system to sell movie tickets for shows at Regal's theaters infringes claims of the '503 patent. Appx0048.

1

The '503 patent states that the invention "relates to reservation systems for goods and services, and, in particular, to a system for reserving available inventory under the control of the inventory holder, while providing access to their inventory through Internet communication networks." Appx0026, '503 patent at 1:10-14. Representative claim 1 of the '503 patent requires, *inter alia*, allocating and adjusting inventory at a local server, communicating available inventory from the local server to a remote reservation server, receiving purchase requests at the reservation server, and communicating adjusted inventory and confirmations from the reservation server to the local server and customers, respectively. *See* Appx0029, '503 patent at 8:33-67.

On October 14, 2013, Mankes filed a complaint (the "Original Complaint") against Fandango, alleging infringement of the '503 patent under 35 U.S.C. §§ 271 *et seq*. On January 6, 2014, Fandango moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Original Complaint for failure to state a claim upon which relief can be granted. That motion was mooted by the district court's allowance of Mankes' motion to amend its complaint. After Mankes filed its amended complaint on March 7, 2014, Fandango moved for judgment on the pleadings based on the Supreme Court's decision in *Limelight Networks, Inc. v. Akamai Technologies, Inc.,* 134 S. Ct. 2111 (2014). On February 26, 2015, the district court granted Fandango's motion for judgment on the pleadings based on the relevant law as it

2

then stood.  Mankes appealed that dismissal of its claims.  During the briefing on that appeal, this Court decided *Akamai Technologies v. Limelight Networks, Inc.*, 797 F.3d 1020 (Fed. Cir. 2015) (en banc).  On April 22, 2016, the district court's judgment was vacated and remanded for further proceedings in light of that *en banc* decision.  *Mankes v. Vivid Seats*, 822 F.3d 1302 (Fed. Cir. 2016).  Following remand, the district court permitted Mankes to amend his complaint.

On June 30, 2016, Mankes filed an amended complaint (the "Second Amended Complaint") against Fandango, and simultaneously added Regal as a defendant.  Appx0046-56. On August 24, 2016, Fandango moved to dismiss the Second Amended Complaint and Regal joined in that motion.  Appx0078.  The basis for the motion to dismiss was the failure of the claims of the '503 patent to claim patent eligible subject matter pursuant to 35 U.S.C. § 101.  After full briefing on the motion to dismiss, on February 28, 2017, the district court found that all of the claims of the '503 patent were directed to patent-ineligible subject matter and dismissed all of Mankes's infringement claims.  Appx0001.  Mankes appeals from that decision.

## <u>SUMMARY OF U.S. PATENT NO. 6,477,503</u>

The '503 patent was issued on November 5, 2002, and is titled "Active Reservation System."  Appx0015.  This patent is directed to systems and methods for controlling an event vendor's inventory.  Appx0026, '503 patent at 2: 57-60.

3

The '503 patent contains four independent claims – three method claims and a single system claim. Appx0029, at 8:33-10:50. There are no dependent claims. Claim 1, which is representative,[1] reads:

> 1. A method for operating an Internet based active reservation system for the purchase of goods and services, comprising:
>
> (a) providing an owner event server located at and operated by a local event owner having an available inventory of goods and services at a local site;
>
> (b) providing an active reservation server located at and operated by user remote from said local site, said active reservation server accepting only data from said owner event server and formatting said data for viewing by an Internet-based consumer;
>
> (c) allocating said available inventory by only said owner event server at all times between local inventory and Internet inventory;
>
> (d) adjusting said available inventory by only said event owner at said owner event server at all times based on purchases of goods and services at said local event site;
>
> (e) communicating said allocated Internet inventory only to said active reservation server;
>
> (f) receiving purchase requests for goods and services in said Internet inventory at said active reservation server from said Internet-based consumer;
>
> (g) communicating said purchase requests from said active reservation server to said owner event server;

---

[1]    Mankes treats Claim 1 as representative for purposes of the patent eligibility analysis and does not argue that any of the elements in claims 2-4 alters the analysis.  *See, e.g.,* Blue Br. at 19 ("[t]he remaining claims of the '503 patent share the same level of detailed claiming to specific methods" as claim 1).

(h) accepting said purchase requests solely at said local event server and adjusting said Internet inventory only by said owner event server at all times to establish an adjusted Internet inventory;

(i) communicating said accepting and said adjusted Internet inventory from said owner event server to said active reservation server; and

(j) communicating said accepting and confirmation indicia relative thereto from said active reservation system to said Internet consumer.

Appx0029, '503 patent at 8:33-67. Independent claims 2 and 3 are directed to a "method for operating a system for locally and remotely reserving the purchase of goods and services" and a "method for system for [*sic*] the reserving goods and services at a local site," respectively. Appx0030, '503 patent at 9:1-10:24. The steps of those additional method claims do not materially differ from claim 1 for purposes of the patent eligibility analysis. Claim 2 specifies that information be communicated through two separate Internet connections and that the local server designate a rate structure. *Id*. at 9:1-34. Claim 3 specifies that the reservation server display available Internet inventory "in a reservation server selected format on a web site for viewing by prospective consumers." *Id*. at 10:7-8. Claim 4 is directed to a system on a local server that performs essentially the same steps as claims 1-3, and has not been asserted in any of Mankes' complaints or contentions. *See id.* at 10:27-50; Appx0052.

In analyzing the specification of the '503 patent, this Court summarized the claimed invention as follows:

5

> The specification describes means of controlling the entire inventory from a local site. The local site maintains the total inventory of available goods and services and designates pricing. Id., col. 3, lines 24-27. It communicates what portion of the inventory is available to an Internet server, which makes that inventory accessible for purchase by consumers online. Id., col. 3, lines 27-32. When a sale is requested over the Internet, the Internet site contacts the local site, which confirms the sale and updates the total inventory. Id., col. 3, lines 38-42. In this way, any time a sale is made, whether at the local or Internet site, the local site can keep an up-to-date account of its total inventory and communicate that information to both sites. Id., col. 3, lines 16-19.

*Mankes v. Vivid Seats Ltd.*, 822 F.3d 1302, 1306 (Fed. Cir. 2016). In short, the invention is directed to using a local inventory server to track inventory when sales are made either locally or over the Internet.

## <u>SUMMARY OF ARGUMENT</u>

The claims of the '503 patent are precisely the kind of claims that have been repeatedly found patent-ineligible under 35 U.S.C. § 101. The '503 patent's claims are directed to a method of allocating, tracking and controlling vendor inventory using standard computer technology. Analogous claims have been uniformly found patent ineligible in this Court's post-*Alice* cases, including *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044 (Fed. Cir. 2017) (systems for processing an application for financing a purchase from a dealer's inventory), *TLI Communs. LLC v. AV Auto., L.L.C.,* 823 F.3d 607 (Fed. Cir. 2016) (methods and systems for classifying and organizing digital images), and *Mortgage Grader v. First Choice Loan Servs.,* 811 F.3d 1314 (Fed. Cir. 2016) (methods and systems

6

for computerized anonymous loan applications).  In all of these cases (and in multiple other post-*Alice* decisions), the patentees sought to claim the use of general computer technology to accomplish business-related abstract ideas. Regardless of the specific idea at issue, claims directed to implementing one's business processes on a computer fail the two-part test of patent eligibility set forth by the Supreme Court in *Alice Corp. v. CLS Bank International,* 134 S.Ct. 2347 (2014).

Mankes seeks to avoid the impact of these precedents by insisting that his claims are analogous to the claims found to cover patent eligible subject matter in *McRO, Enfish* and *DDR Holdings*.  Blue Br at 14-16.  But the '503 patent's claims bear no resemblance to the claims at issue in those cases, which were found patent eligible because the patentees demonstrated that the claims were directed to improving the way that the underlying technology worked to solve technical problems.  *See, e.g., Enfish*, 822 F.3d at 1336 (claimed invention was found not abstract because it represented a "specific improvement to the way computers operate").  The principle embodied in those cases—that inventions that solve technical problems and provide "specific improvement" to the way computers operate are not directed to abstract ideas—is inapplicable to claims that simply seek to implement an abstract business practice (tracking inventory) on a computer.  *See Credit Acceptance Corp.*, 859 F.3d at 1055 (distinguishing *Enfish*

and *McRO* because automation of manual business process "does not amount to an improvement in computer technology"); *TLI Communs. LLC*, 823 F.3d at 612 (distinguishing *Enfish* because the claimed invention was "not directed to a specific improvement to computer functionality" and instead "fails to provide any technical details for the tangible components" and describes them "in purely functional terms").

In stark contrast to the cases on which Mankes relies, the '503 patent contains no indication in either the claim language or the specification that the claims improve the operation of the computer technology used to implement the claim steps. Mankes asserts that "the claims recite the specific manner in which a local event server and reservation server interact to enable local control of all inventory." Blue Br. at 7-8. But the claims do no such thing. <u>As shown in Claim 1, the only "manner" in which the claim specifies the two servers interact is that they communicate with each other.</u> The only purported improvement embodied in Claim 1 is implementing the inventory tracking and allocation process on a standard computer system. Using computers to implement an invention – even if it were a novel implementation – does not constitute a non-abstract improvement in the way the computers operate. *Credit Acceptance,* 859 F.3d at 1055.

Mankes' own description of his alleged invention belies his claim that the problem he was trying to solve was a technological one. Mankes himself concedes

8

that the '503 patent provides "a technical solution to a business problem."  Blue

Br. at 21 (emphasis added).  Mankes concedes that reservation systems allowing

vendors to make tickets available online predated his invention by years, and that

event owners used servers to manage inventory prior to his alleged invention.  Blue

Br. at 4.  The problem that he claims to have noted and then solved is the local

owner not having full control over the inventory to be sold, leading to possible

double booking or unsold inventory.  *See* Blue Br. at 4-5.  His proposed solution to

this problem is that the "entire inventory resides at and is controlled at the local

point of sale site."  Appx0026, '503 patent at 2:59-60.  Such problem with

inventory management is (as Mankes himself admits) a business problem, not a

technical one.

Nor is there any basis for finding that the claims of the '503 patent contain

an "inventive concept" sufficient to confer patentability.  The '503 patent's claims

invoke computers and the Internet for their standard and conventional uses (*e.g.,*

adjusting inventory numbers, communicating, and receiving requests).  *See*

Appx0029, '503 patent at 8:33-10:50.  Such implementation using standard

computer technology cannot support a finding of an inventive concept.  *See Alice*,

134 S.Ct. at 2360 (use and arrangement of generic computer components do not

transform the claim as a whole into "significantly more" than the abstract idea

itself); *TLI Communs. LLC,* 823 F.3d at 615 ("vague, functional descriptions of

server components are insufficient to transform the abstract idea into a patent-eligible invention").

The district court also properly decided the patent eligibility issues on a motion to dismiss. Indeed, in opposing the motion below, Mankes failed to (1) identify any claim construction issues that would affect the § 101 analysis; (2) seek leave to conduct discovery or identify any relevant factual issues; or (3) otherwise dispute substantively the propriety of resolving the patent eligibility issue on the motion to dismiss. Appx0096-113.

## **ARGUMENT**

## I.     **Standard of Review and Legal Standards for Motions to Dismiss Based on Lack of Patent Eligible Subject Matter**

The question of whether a motion to dismiss was properly granted is a procedural question not pertaining specifically to patent law, to which this Court applies the rules of the regional circuit. *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,* 776 F.3d 1343, 1346 (Fed. Cir. 2014). The Fourth Circuit reviews a district court's grant of a motion to dismiss *de novo*. *Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002). A district court's patent eligibility determination under 35 U.S.C. § 101 is also reviewed *de novo*. *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015).

Under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Twombly*, 550 U.S. at 558 (quoting 5 C. Wright & A. Miller, FEDERAL PRACTICE & PROCEDURE § 1216, at 233-234).

In *Alice Corp. v. CLS Bank Int'l*, 134 S.Ct. 2347 (2014), the Supreme Court delineated a two-part test to analyze patent eligibility under Section 101. First, "determine whether the claims at issue are directed to a patent-ineligible concept, such as an abstract idea." *TLI Communs. LLC,* 823 F.3d at 611, *quoting Alice*, 134 S.Ct. at 2355. Second, "determine whether the additional elements transform the nature of the claim into a patent-eligible application" by adding an inventive concept. *Id* (internal quotation marks omitted). Claims containing "generic computer components" are "insufficient to add an inventive concept to an otherwise abstract idea." *Id*. at 614. Determining whether patent claims are patent eligible can be appropriately resolved in the context of a motion to dismiss for failure to state a claim. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 711-12 (Fed. Cir. 2014); *see also TLI Communs. LLC,* 823 F.3d at 610 (grant of Rule 12 motion affirmed).

11

**II.    *Alice* Step One:  The District Court Correctly Found That the Claims of the '503 Patent are Directed to the Abstract Idea of Allocating, Tracking and Controlling Inventory**

The first step of the *Alice* analysis requires determining whether the claims at issue are directed to an abstract idea.  *Alice*, 134 S.Ct. at 2355.  The district court correctly found that the claims of the '503 patent are directed to the abstract idea of "allocating, tracking, and controlling inventory."  Appx0008.

The '503 patent's claims themselves make plain that the aim of the invention is to allocate, track and control inventory.  All of the steps describe managing the inventory so that allocation of that inventory (e.g., movie tickets) is always controlled by the local event owner (e.g., the theater owner).  The first two steps of representative claim 1 require providing a "server" at the local site with an available inventory and another "server" accepting data from the first server for viewing by Internet consumers.  There are steps for "allocating" inventory and then "adjusting" inventory based on purchases made.  All of the other steps relate to the communication of data concerning either the inventory itself ("communicating said allocated Internet inventory" and "communicating . . . said adjusted Internet inventory") or the receipt and processing of purchase requests ("receiving purchase requests" and "accepting said purchase requests solely at said local event server").  Appx0029, '503 patent at 8:50-64.  Of the ten steps of the claimed method, two relate to providing servers for managing inventory; two relate to allocating and

12

adjusting the available inventory; and the remaining six relate to communicating data about the available inventory.

The conclusion that the claims of the '503 patent are directed to the abstract idea of allocating, tracking and controlling inventory is bolstered by the patent specification. As described in the specification "the present invention has been developed to provide a system in which the event vendor's entire inventory resides at and is controlled at the local point of sale site." Appx0026, '503 patent at 2:57-60. In this system, "the event vendor uses a local event owner server to allocate, control and reserve their inventory at their place of business." Appx0027, '503 patent at 3:6-8. A critical aspect of the invention is that the "local server allocates a portion of the inventory as reservation server inventory." *Id*. at 3:27-28.

The specification also makes plain that the claimed methods for tracking and allocating inventory are implemented on a generic computer system. Figure 1 is described as showing a preferred embodiment and includes simply "servers" and "modems" with Internet connections depicted between the event owner, the active reservation server and the consumer. Appx0027, '503 patent at 4:37-48, Fig.1. Indeed, the only descriptions of technology that may be used are of "a standard x86 Pentium class-based system with ample CPU, speed memory and hard drive storage to serve the needs of its operation," *id*. at 5:5-8, "a commercially available computer and software adjuncts for the [functions], *id*. at 5:20-21, and a "typically

commercially available system that can achieve an Internet connection and download and receive web pages," *id*. at 5:38-40 (all emphases added). Thus, the specification confirms that the claims are met by standard, commercially available computer hardware and do not require the use of specialized computer hardware.

Mankes concedes that he did not invent the use of computer-based reservation systems to receive and respond to purchase requests. *See* Blue Br. at 4 (recognizing that online reservations systems were introduced in the 1990s). Indeed, the specification recognizes that the prior art includes such systems. *See, e.g.*, Appx0026, '503 patent at 2:37-47 (describing the Helbling prior art of an automated system of viewing and dispensing theater tickets and the Feldman prior art for an automated hotel reservation processing method).

Claims that use generic computer language (including using "servers" and the "Internet") to implement business ideas have consistently been found to fail the first step of the *Alice* test for patent eligibility. The claims at issue in *Credit Acceptance Corp.* are illustrative. In that case, the claims were directed to a "system for generating financing packages provided by a financing party, for a customer purchase of a product from a dealer's inventory of a plurality of products." 859 F.3d at 1047. As with the '503 patent, the claims involved storing and communicating information to address a perceived problem in the efficiency of the prior art process. Like the '503 patent's claims, the claims at issue in *Credit*

14

*Acceptance* require the use of computer components such as "a database," "a server" and a "user terminal" that can communicate "over a network." *Id.* Also like the '503 patent's claims, the *Credit Acceptance* claims provide detail as to specific data to be stored and transmitted (*i.e.*, "dealer cost associated with each product," "financial information about the customer," and "financing terms"). *Id.* In affirming the district court's ruling that the claims were directed to "the abstract idea of processing an application for financing a purchase,'" this Court found "no meaningful distinction" between these claims and those found abstract in *Alice* and *Bilski. Id.* at 1054.

The patentee in *Credit Acceptance* asserted (as Mankes does) that its claims were not abstract because they improved the functionality of the computers and asserted that there was no record evidence that computers had previously been configured to perform the claimed steps. *Id*. at 1055. That position was rejected because "mere automation of manual processes using generic computers does not constitute a patentable improvement in computer technology" and instead uses computers as tools to implement independently abstract ideas. *Id.* Like the claims in *Credit Acceptance*, the '503 patent's claims do no more than use computers as tools to implement an abstract idea that could be performed manually – essentially, keeping track of ticket inventory sold from more than one location.

This Court used the same analysis to find claims patent-ineligible in *TLI* and *Mortgage Grader* that are also analogous to the '503 patent's claims.  Like the claims in the '503 patent, the claims in both *TLI* and *Mortgage Grader* involve computer implementation of systems that store and organize data and facilitate the communication of that data.  The claims at issue in *TLI* require the use of technology including a "telephone unit," and a "server."  *TLI Communs. LLC*, 823 F.3d at 610.  The claims at issue in *Mortgage Grader* include "a database," "a computer," and multiple "interfaces."  *Mortgage Grader, Inc.*, 811 F.3d at 1318.  In each of these cases, the claims required steps in which the information to be processed was quite detailed and specific.  As just one example, the representative claim in *Mortgage Grader* required, *inter alia*,

> a second interface that prompts a borrower to enter personal loan evaluation information, and invokes, on a computer, a borrower grading module which uses at least the entered personal loan evaluation information to calculate a credit grading for the borrower, said credit grading being distinct from a credit score of the borrower, and being based on underwriting criteria used by at least some of said lenders.

811 F.3d at 1318.  Nonetheless, all the claims in these cases were patent ineligible because the claims were directed to abstract ideas and simply used

computer technology as a tool to implement them.  *TLI Communs. LLC,* 823 F.3d at 612; *Mortgage Grader*, 811 F. 3d at 1325.

Mankes makes no effort to distinguish any of these recent cases involving claims very similar to the '503 patent's claims.  Instead, Mankes first suggests that his claims are not directed to an abstract idea because they do not include or "even implicate" an algorithm and "one is struck by the detail and technical nature of the claims."  Blue Br. at 14.  There is no requirement that a claim involve an algorithm to be directed to an abstract idea, and Mankes provides no citation for such a proposition.  *Id.*  Indeed, the law is plainly to the contrary as many cases have found claims that did not involve an algorithm to be directed to abstract ideas.  *See, e.g., TLI Communs. LLC,* 823 F.3d at 610; *Mortgage Grader*, 811 F. 3d at 1318.

Nor is the amount of "detail" in the claims a basis to conclude that those claims are not directed to an abstract idea.  In fact, the '503 patent claims provide no technical detail.  They simply describe the use of two servers to manipulate data and communicate over a network.  As described above, the claims at issue in *Mortgage Grader* were far more detailed than those of the '503 patent and were found patent ineligible.  811 F.3d at 1318.  Moreover, as *Alice* and subsequent decisions have made plain, it is the idea to which the claim is directed that controls the analysis, not the level of detail included in the claim steps.  134 S.Ct. at 2350, 2357; *see also I/P Engine, Inc. v. AOL Inc.*, 576 F. App'x 982, 995 n.4 (Fed. Cir.

2014) ("[T]he complexity of the implementing software or the level of detail in the specification does not transform a claim reciting only an abstract concept into a patent-eligible system or method"), citing *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013).

Mankes then seeks to analogize the '503 patent's claims to claims found patent eligible in a trio of cases: *McRO*, *Enfish*, and *DDR Holdings*. Blue Br. at 14-16. These cases are all readily distinguishable because in each of those cases, the patentee was able to establish that its invention tackled a technical problem particular to how the computers themselves performed a particular task, and improved the way that the computers handled that task. In *McRO, Inc. v. Bandai Namco Games America, Inc.*, 837 F.3d 1299 (Fed. Cir. 2016), the use of specific, defined rules set forth in the claims improved the operation of the technology for animation of human speech. The *McRO* claims require more than implementing the animation of speech using standard computer functions. Instead, the claims require that the technical solution be implemented using, *inter alia*, "rules that define output morph weight set stream as a function of phoneme sequence and time of said phoneme sequence," "a timed data file of phonemes having a plurality of sub-sequences," and "an intermediate stream of output morph weight sets and a plurality of transition parameters between two adjacent morph weight sets by evaluating said plurality of sub-sequences against said first set of rules." *Id.* at

18

1308.  Unlike the claims of the '503 patent, the *McRO* claims are directed to solving a technical problem and claim particular solutions for doing so.

In *Enfish LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016), the claims require the use of a particular type of data table (a "self-referential table"). Of critical importance, the specification in that case demonstrated that the claimed self-referential table "functions differently than conventional database structures." 822 F.3d at 1337.  Moreover, the specification taught that using this particular type of table, in contrast with the prior art tables, achieved particular benefits for the operation of computers "such as increased flexibility, faster search times, and smaller memory requirements."  *Id*. As *Enfish* explains, in the first step of the *Alice* inquiry the question is "whether the focus of the claims is on the specific asserted improvement in computer capabilities . . . or, instead, on a process . . . for which computers are invoked merely as a tool."  *Id.* at 1336.  In *Enfish*, the claims were found patent-eligible because they were directed to an improvement in database structures that improved computer capabilities, not an abstract idea.

Likewise, in *DDR Holdings*, the invention was not "the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet" but instead was "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks."  *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d

1245, 1257 (Fed. Cir. 2014). The problem of having customers leave a particular website and direct their traffic to third parties after clicking a link on the website was limited particularly to computer technology, and the solution to have "mockup" websites that gave the look and feel of a third party's website without actually sending the customer away from the original website's owner was also limited to that technological issue. *See id.* As in *Enfish*, the claimed improvement was to the computer technology itself, not the use of generic computer technology to improve a business practice.

Comparing the claims held patent eligible in *McRO* and *Enfish* to the '503 patent's claims highlights the dramatic differences between them. In *McRO* and *Enfish*, the claims themselves describe <u>how</u> to implement the improvement in the technology, rather than just the desired result. Thus, in *Enfish*, the claims require that the tables be constructed in a particular way, including using a specific four-step algorithm that mandates how each row and column is identified. 822 F.3d at 1336-37. Likewise, in *McRO*, the claims describe the method to be used to produce the improved lip synchronization, including the details of how the "output morph weight" and "phoneme sequence and time" are used. 837 F.3d at 1313.

In contrast to those patent-eligible claims, the '503 patent's claims specify the functions to be performed by the computers ("allocating" "adjusting" and "communicating"), but nothing about the technology to be used to implement those

20

functions—other than that there should be two servers that communicate with each other.  Such computer-based claims that focus on results are not patent eligible. *See Intellectual Ventures I LLC v. Capital One Fin. Corp*., 850 F.3d 1332, 1342 (Fed. Cir. 2017) ("law demands more" than claims that provide "result-oriented solution, with insufficient detail for how a computer accomplishes it").

The '503 patent's claims are exactly what *Enfish* described as a patent-ineligible—claims that invoke the computer solely as a tool.  All of the steps of Claim 1 describe using a computer to perform the normal steps that computers are built to accomplish:  storing and manipulating data and communicating over networks.  The claims are "detailed" only to the extent they provide the results to be accomplished (such as accepting purchase requests and adjusting the inventory) and lack any requirement as to how the computer accomplishes those ends or how the computer's operation is improved.

In *Enfish* and *McRO*  the patent specifications demonstrated that the problem being tackled was a technological one.  *See, e.g., Enfish*, 822 F.3d at 1337 ("The present invention improves upon prior art information search and retrieval systems by employing a flexible, self-referential table to store data."); *McRO*, 837 F.3d at 1306 ("[T]he 'present invention overcomes many of the deficiencies of the prior art . . . .'").  In *DDR Holdings*, the specification showed that the problem solved was one that arose specifically in the technological realm of computer networks.

773 F.3d at 1257.  By contrast, the '503 patent specification does not describe a

technological problem being addressed by the claimed invention.  The only

"problem" that Mankes identifies was a mismatch between available tee times sold

in advance versus walk up tee times.  Blue Br. at 3.  This business inefficiency

unmoored to a technological environment and addressed simply by using a

computer to track the inventory is not a technological fix like those in *Enfish*,

*McRO*, and *DDR Holdings*.

Because the claims of the '503 patent merely implement an abstract idea for

allocating, tracking and controlling inventory on generic computers, those claims

are directed to an abstract idea under step one of the *Alice* analysis.

## III.  *Alice* Step Two:  The District Court Correctly Held that the '503 Patent Claims Did Not Include an Inventive Concept Sufficient to Confer Patent Eligibility

Once the claims are found to be directed to an abstract idea in the first step

of the *Alice* analysis, the question is whether the claims include an adequate

"inventive concept" sufficient to confer patentability by transforming the claim "as

a whole into 'significantly more' than a claim to the abstract idea itself." *Credit

Acceptance Corp.*, 859 F.3d at 1056 (citing *Alice*, 134 S.Ct. at 2360)).  This

Court's precedent makes plain that generic computer technology does not suffice

to render claims patent eligible.  This Court has "repeatedly held that such

invocations of computers and networks that are not even arguably inventive are

'insufficient to pass the test of an inventive concept . . . .'" *Electric Power Group, LLC v. Alstom S.A.,* 830 F.3d 1350, 1355 (Fed. Cir. 2016) (quoting *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014)).

In particular, "that a computer receives and sends the information over a network—with no further specification—is not even arguably inventive." *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014); *see also Ultramercial*, 772 F.3d at 715-16 (holding claims with steps such as "receiving" data, "providing" data, and "receiving" a request invalid under Section 101). Significantly, the Supreme Court held in *Alice* that "mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 134 S. Ct. at 2358. The Court explained that applying an abstract idea on a generic computer is "not enough for patent eligibility." *Id.* Expanding on that idea, the Court noted that, "[g]iven the ubiquity of computers, wholly generic computer implementation is not generally the sort of 'additional featur[e]' that provides any 'practical assurance that the process is more than a drafting effort designed to monopolize the [abstract idea] itself.'" *Id.* (internal citations omitted) (quoting *Mayo*, 132 S.Ct. at 1297).

Claim 1 includes only the generic computer limitations of "server" and "Internet." The '503 patent's specification confirms that the claimed methods for tracking and allocating inventory are implemented on a generic computer system.

The computers to be used are described in the specification as "a <u>standard</u> x86 Pentium-class based system with ample CPU, speed memory and hard drive storage to serve the needs of its operation," Appx0028, '503 patent at 5:5-8, "a <u>commercially available</u> computer and software adjuncts for the [functions], *id*. at 5:19-21, and a "<u>typically</u> <u>commercially available</u> system that can achieve an Internet connection and download and receive web pages," *id*. at 5:37-41 (all emphases added). Thus, the specification confirms that the claims are met by generic computer implementation.

Mankes' own description of the alleged "inventive concept" demonstrates that there is nothing beyond the abstract idea of tracking inventory on generic computers. He identifies first the fact that the claimed invention provides for two inventories (local and Internet) to be maintained while control is maintained by the inventory owner. Blue Br. at 20. That concept of how to set up the inventories is itself an abstract idea. *See Credit Acceptance*, 859 F.3d at 1055-56. Mankes then states the various steps of communicating data that are performed by the generic servers in the claim such as sending purchase requests, confirming sales and adjusting the inventory. Blue Br. at 20. Such steps involving the use of computers merely to communicate and manipulate data do not support a finding of patent eligibility. *See, e.g., OIP Techs*., 788 F.3d at 1363 ("relying on a computer to perform routine tasks more quickly or more accurately is insufficient to render a

claim patent eligible"); *Credit Acceptance*, 859 F.3d at 1056-57 (rejecting assertion that programming a general computer to perform tasks led to patent eligibility).

Mankes also fails to provide any support for his assertion that the '503 patent's claims are directed to anything other than conventional uses of computers and the Internet. While Mankes contends (without any citation to the specification or elsewhere in the record) that its invention is "technical," he fails to articulate any technical problem that was faced by persons of skill in the art and solved by his invention. Indeed, Mankes concedes that the problem he purports to solve is a "business problem." Blue Br. at 21 (asserting without citation that Mankes "provided a technical solution to a business problem and implemented the solution in a specific way"). The lack of any technical aspect to the claimed inventions is confirmed by the claim charts attached to the Second Amended Complaint, which assert that the claim elements are met simply by performing the steps on a generic computerized system and using generic servers. *See* Appx0071-74 (describing alleged infringement based on *e.g.*, use of a "server" and a "web site").

Taken together, the functions performed by computer-related components in the claims of the '503 patent fall well short of creating a basis for patent eligibility. *See TLI Communs. LLC,* 823 F.3d at 611-14 (steps of receiving data, extracting information , and storing data "fall squarely within our precedent finding generic computer components insufficient to add an inventive concept to an otherwise

abstract idea"). This case is a classic example of a patent that describes an abstract idea and then instructs practitioners to do it on a computer. *See Alice*, 134 S.Ct. at 2358. In the absence of any inventive concept being added to the abstract idea of allocating, tracking and controlling inventory, the '503 patent's claims fail the second step of the *Alice* analysis and, therefore, are not patent eligible.

## IV.     The District Court Correctly Found that the '503 Patent Implicates Concerns for Preemption in the Field of Local and Remote Inventory Control

Mankes's contention that the '503 patent is patent eligible because it does not preempt every application of remote and local inventory control is incorrect for two reasons. <u>First</u>, it evidences a misunderstanding of the preemption concern "that undergirds [the] § 101 jurisprudence" and incorrectly suggests that lack of total preemption confers patent eligibility. *Alice*, 134 S. Ct. at 2358. This Court has repeatedly held to the contrary. *See Intellectual Ventures I*, 838 F.3d at 1321 ("the absence of complete preemption does not demonstrate patent eligibility") (citations omitted); *McRO*, 837 F.3d at 1315 (same). There is no separate preemption test for patent eligibility; rather, the preemptive effect of a claim may be considered as part of the *Alice* analysis as to whether the claims are directed to an abstract idea or contain an inventive concept. *See McRO*, 837 F.3d at 1314-15 (discussing preemption concerns in the step one *Alice* analysis); *Bascom*, 827 F.3d at 16 (discussing preemption in the step two *Alice* analysis). As one trial court

explained, "[p]reemption is the touchstone of the §101 inquiry" and is therefore inherent in both steps of the *Mayo/Alice* analysis. *Virginia Innovation Scis., Inc. v. Amazon.com, Inc.,* 227 F. Supp. 3d 582 (E.D. Va. 2017).

<u>Second</u>, the '503 patent claims do raise preemption concerns in the context of the *Alice* analysis.  The '503 patent at its core recites a general method of centralized inventory control using generic computers. Rather than having two inventory systems—one for local and another for remote reservations or purchases—the '503 patent envisions an intermediary that centralizes the process. That intermediary is no more specific than any "typically commercially available computer and software" connected to the local and remote inventory systems via the internet. Appx0028, '503 patent at 5:20-21. The claimed invention is thus the computer implementation of an abstract idea. Indeed, as the district court found, "[l]ike the claims in *Alice*, the claimed methods simply provide a method of implementing the well-known business practice of inventory management on conventional computer hardware." Appx0011.

*McRO* explains that to determine whether a claim raises preemption concerns for purposes of determining patent eligibility, this Court looks "to whether the claims in these patents focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery."

27

*McRO*, 837 F.3d at 1314.  As discussed *supra* at 12-14, the '503 patent's claims are the epitome of claims to the abstract idea itself that invoke generic computers and do not provide any "specific means or method that improves the technology."

The purported limitations on the scope of the '503 patent's claims on which Mankes relies do not alleviate the preemption concerns. Blue Br. at 22.  Mankes cites multiple claim limitations, focusing on various words that he contends limit the invention and avoid any preemptive effect. For example, Mankes contends Claim 1 is limited in scope because only the event owner can allocate and adjust inventory. Claim 2 is supposedly similarly limited because only the local event server can communicate the reservation inventory and accept prospective reservations. Finally, Claim 3 is ostensibly limited because only the active reservation server can manage the reservation process and/or allocate inventory. *Id*. at 22-23. Mankes seems to suggest that because the claims repeatedly use the terms "only," "solely," and "at all times," any preemption concerns are negated. But that is not the appropriate analysis regarding preemption.

The preemption analysis instead must focus on whether the claimed limitations on which Mankes relies meaningfully limit the preemptive scope of the invention to cover only specific means and methods of accomplishing a result, rather than being directed to the result itself.  *McRO*, 837 F.3d at 1315.  Vesting inventory control in only the event owner at all times, reservation authority in only

the local computer at all times, and inventory allocation in only the active

reservation server at all times does not limit the scope of the preemption because

the claims still preempt the desired result of centralizing inventory control in a

single point of control, <u>no matter what specific methods are used to accomplish it</u>.

The event owner lays out the initial parameters, whether it is the number of seats

available in a movie theatre or the number of widgets for sale at a factory. Some

orders are made locally, others remotely. There is someone or something in the

middle coordinating the process and in regular communication with every other

node in the system so that the optimal result is achieved. Adding generic

computers and the Internet to this process does not fundamentally transform it into

a patent-eligible process. *See Accenture Global Servs* at 1345; *Ultramercial*, 772

F.3d at 715 ("We conclude that the limitations of the '545 claims do not transform

the abstract idea that they recite into patent-eligible subject matter because the

claims simply instruct the practitioner to implement the abstract idea with routine,

conventional activity."). Claims that would cover any computer implementation of

the abstract idea go to the heart of the preemption concerns raised in *Alice*, and the

district court properly found the '503 claims patent ineligible.

## V.    The District Court Did Not Err in Finding the '503 Patent Claims Patent Ineligible on a Rule 12 Motion

Whether patent claims are patent eligible under 35 U.S.C. § 101 is a

threshold issue of law that can be determined on a motion to dismiss.

*Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 711-12 (Fed. Cir. 2014). That is particularly true where, as here, the patentee does not suggest that there are any claim constructions that affect patent eligibility and does not ask the district court to allow any discovery before resolving the motion.

Even in his opening brief, Mankes fails to identify any factual disputes that could affect the analysis. Mankes has not disputed that the idea of managing inventory was well-known before his claimed invention. Indeed, Mankes himself describes the state of the art as consisting of companies maintaining inventories of tickets or reservations and simultaneously having inventories available at both a local site and online over the Internet. *See* Blue Br. at 4. The only aspect of the claims that Mankes asserts is not in the prior art is the idea that instead of the local site and the Internet vendor each tracking inventory separately, the local site should keep track of the total inventory available and keep the Internet vendor apprised of how much inventory remains. Even if it were novel to track inventory that way, assigning the task inventory tracking to one entity (as opposed to having each entity track its inventory separately) is an abstract idea. *See, e.g., Credit Acceptance*, 859 F.3d at 1055-57; *Bilski v. Kappos*, 561 U.S. 593 (2010) (patent claims directed to risk hedging patent ineligible because directed to an abstract idea); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367-68 (Fed. Cir. 2015) ("tracking financial transactions to determine whether

they exceed a pre-set spending limit (i.e., budgeting)" is an abstract idea that "is not meaningfully different from the ideas found to be abstract in other cases . . . involving methods of organizing human activity.").

Mankes' reliance on *Bascom Global Internet v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016), is misplaced.  Importantly, the Court did not hold that the Bascom claims were patent eligible, only that it could not decide the question at the 12(b)(6) stage because of issues extant in the step two analysis.  In that case, the claimed invention was found to (at least temporarily) overcome step two of the *Alice* test based on the Court's *de novo* review and holding that the ordered combination of the elements could have been more than simply implementing the abstract idea of filtering Internet content.  *Id.* at 1346.  That is, the district court needed more information in the record to determine if the ordered combination of conventional computer elements amounted to an unconventional use of those elements, which could confer patent eligibility.  Nothing in *Bascom* suggests that the district court should not address patent eligibility prior to discovery particularly where, as here, the patentee fails to identify any basis for concluding that the invention is directed to a technical issue or departs from the conventional uses of computers.  *Credit Acceptance*, 859 F.3d at 1057 (distinguishing *Bascom* because, *inter alia*, patentee failed to "clearly identify any particular inventive concept in the ordered combination").

## **CONCLUSION**

For the foregoing reasons, Defendants-Appellees Fandango and Regal

respectfully request that the judgment of the district court be affirmed and the

claims of infringement be dismissed with prejudice.

Dated:  July 24, 2017                    Respectfully submitted,

                                         */s/ Steven M. Lieberman*
                                         Steven M. Lieberman
                                         Sharon L. Davis
                                         ROTHWELL, FIGG, ERNST &
                                         MANBECK, P.C.
                                         607 14th Street, N.W., Suite 800
                                         Washington, DC  20005
                                         Ph:  202-783-6040

                                         *Attorneys for Defendant-Appellee*
                                         *Fandango, LLC*

              By:    */s/ Neil J. McNabnay*
                     Neil J. McNabnay
                     David B. Conrad
                     Ricardo J. Bonilla
                     FISH & RICHARDSON P.C.
                     1717 Main Street
                     Suite 5000
                     Dallas, TX 75201
                     Phone: 214-747-5070

                     *Attorneys for Defendant-Appellee*
                     *Regal Entertainment Group*

32

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 24th day of July, 2017, the foregoing BRIEF OF DEFENDANTS-APPELLEES FANDANGO, LLC AND REGAL ENTERTAINMENT GROUP was filed electronically with the U.S. Court of Appeals for the Federal Circuit by means of the Court's CM/ECF system.  I further certify that the foregoing was served by means of electronic mail, as well as by the Court's CM/ECF system, which should have sent a Notice of Docket Activity, upon the following counsel of record for Plaintiff-Appellant Robert Mankes:

Anthony J. Biller, Esq.
David E. Bennett, Esq.
Coats & Bennett PLLC
1400 Crescent Green, Suite 300
Cary, NC 27518
(919) 854-1844 (t)
(919) 854-2084 (f)
abiller@coatsandbennett.com
dbennett@coatsandbennett.com

*Counsel for Plaintiff-Appellant Robert Mankes*

*/s/ Nasri V. B. Hage*
Nasri V. B. Hage
ROTHWELL, FIGG, ERNST &
MANBECK, P.C.

1

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, <u>AND TYPE STYLE REQUIREMENTS</u>

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 7,695 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated:  July 24, 2017                                    */s/ Steven M. Lieberman*
                                                                         Steven M. Lieberman